# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEWPAGE CORPORATION, *et al.*, | ) | Case No. 11-12804(KG) |
| | ) | |
| Reorganized Debtors. | ) | |
| _____ | ) | |
| PIRINATE CONSULTING GROUP, LLC, | ) | |
| AS LITIGATION TRUSTEE OF THE | ) | |
| NP CREDITOR LITIGATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 13-52443(KG) |
| | ) | |
| STYRON LLC | ) | |
| | ) | |
| Defendant. | ) | **Re Dkt No. 19 & 25** |
| _____ | ) | |

## MEMORANDUM OPINION

The Court has before it cross-motions for partial summary judgment in this interesting adversary proceeding. Pirinate Consulting Group, LLC, as Liquidation Trustee of the NP Creditor Liquidation Trust (the "Trustee"), has brought suit against Styron LLC ("Styron"), to avoid and recover $11,788,000.85 in transfers which debtors NewPage Corporation and NewPage Wisconsin Systems Inc. (together, "Debtors") made to Styron during the ninety days immediately prior to Debtors' bankruptcy filing, *i.e.*, June 9 through September 6, 2011 (the "Preference Period")[1]. Debtors filed for bankruptcy on September 7, 2011 (the "Petition

---

[1] The Court is addressing only that portion of the claim which the partial summary judgment cross-motions entail, namely, the post-petition draw on the letter of credit, discussed *infra*.

Date"). The parties' basic contentions are these: (1) Styron argues that it is entitled to use as part of its new value defense all unpaid invoices as of the Petition Date and which were paid post-petition when Styron drew on a letter of credit at a third-party bank; (2) the Trustee contends that as a creditor that drew on a collateralized letter of credit to satisfy invoices, Styron is not entitled to an "unpaid new value" credit because it did not enrich Debtors' estate.

## Facts

Styron and Debtors began doing business together in June 2010, when Styron purchased a division of Dow Chemical that had been selling chemicals and related material to Debtors. Styron continued such sales. Affidavit of Michael Loughery, ¶ 7 ("Loughery Aff.") (D.I. 19, Attachment 2) (Senior Financial Analyst of Styron).

Styron became a beneficiary on September 15, 2010, to a letter of credit (the "LOC") which was originally issued to Debtors on July 20, 2009. *Id.*, ¶ 10. At that time, Debtors posted the LOC for the benefit of Dow Chemical in the amount of $2 million. Later, Debtors substituted Styron for Dow Chemical as beneficiary and increased the LOC to $3 million. *Id.*, Ex. 2.

The LOC, according to Debtors, was issued pursuant to the Revolving Credit and Guaranty Credit Agreement, dated December 21, 2011, for which Debtors were borrowers. Debtors had $101 million in letters of credit issued but not drawn as of June 30, 2011. Declaration of George F. Martin in Support of Debtors' First Day Motions and Applications, ¶ 9 ("First Day Decl.") (D.I. 3, Chapter 11 Case).

2

Wachovia Bank, N.A.[2], was an issuing bank for letters of credit. Debtors granted a first priority lien on all cash, receivables, inventory and the like to secure their obligations. Debtors were required to reimburse amounts drawn on letters of credit. The letters of credit, including the LOC, were fully collateralized. When Wells Fargo honored a draw on the LOC, and other letters of credit, it immediately notified Debtors who then reimbursed Wells Fargo. The procedure for a Styron draw required Styron to present a statement, "invoice(s) have not been paid and are past due. We therefore demand payment in the amount of (insert amount) as same is due and owing." The LOC terms limited draws to past due invoices. Loughery Aff., ¶ 11.

From April 2010 to August 26, 2011, Debtors paid Styron's invoices on an average of fourteen days after Styron issued an invoice. On August 26, 2011, Styron changed the payment terms to require cash in advance because Styron was worried about Debtors' credit position. Email from Michael Loughery, dated August 26, 2011. Debtors and Styron agreed to reduce the $3 million LOC by $200,000. Email from Timothy Musbaum to Styron, dated August 28, 2011.

---

[2] Wachovia Bank, N.A., merged with and into Wells Fargo Bank, N.A. ("Wells Fargo") on March 20, 2010. Accordingly, hereafter the Court will refer to the issuing bank as "Wells Fargo."

Between August 30, 2011, and just prior to the Petition Date, Debtors made the following cash in advance payments:

| Cash-in-Advance Payments | | | |
|---|---|---|---|
| **Check Number** | **Transfer Type** | **Clear Date** | **Check Amounts** |
| 2003049517 | ACH | 8/30/2011 | $2,159,720.69 |
| 2003051916 | Wire | 9/1/2011 | $2,485.27 |
| 2003052949 | Wire | 9/6/2011 | $1,141,718.38 |
| | TOTAL: | | $3,303,924.34 |

Debtors also made the following payments:

| **Check Number** | **Transfer Type** | **Clear Date** | **Check Amounts** |
|---|---|---|---|
| 2000148437 | ACH | 8/26/2011 | $261,431,48 |
| 2000196637 | ACH | 8/26/2011 | $177,247.57 |
| 2000208906 | ACH | 8/26/2011 | $126,580.77 |
| 2000263725 | ACH | 8/26/2011 | $211,278.31 |
| | TOTAL: | | $776,538.13 |

Following the foregoing payments, Debtors had outstanding invoices from Styron totaling $1,920,769.35. Loughery Aff., Exhibits 2-4. Styron then drew on the LOC after the Petition Date as follows:

| Draw Date | Amount | Draw Fees | Total Paid by NewPage to Wells Fargo |
|---|---|---|---|
| September 14, 2011 | $1,625,307.35 | $1,500.00 | $1,626,807.35 |
| October 4, 2011 | $338,847.83 | $847.12 | $339,694.95 |
| | TOTAL: | | $1,966,502.30 |

**DISCUSSION**

**A.  Jurisdiction and Venue**[3]

This Court has subject matter jurisdiction over this adversary proceeding, which arises under title 11 of the United States Code and arises in and relates to the Chapter 11 Cases commenced in the Court.  The statutory predicates for the relief sought herein are sections 502, 547, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

The adversary proceeding is a core proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders for matters contained herein.  Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.  Standards for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty*

---

[3] Styron explains in its motion papers that because it never filed a proof of claim in Debtors' cases, Styron is entitled to a jury trial and has until October 31, 2014, to withdraw the reference. Styron further explains, and the Court concurs, that the Court retains jurisdiction for the pretrial matters, including disposition motions, and that such a ruling does not deprive Styron of its jury trial right.  The issue is academic at this time, however, because Styron is a movant and has not yet requested a ruling on the jury trial issue.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "where reasonable minds could disagree on the result." *Delta Mills, Inc. v. GMAC Comm. Fin., Inc.* (*In re Delta Mills, Inc.*), 404 B.R. 95, 105 (Bankr. D. Del. 2009). The moving party bears the burden of demonstrating an entitlement to summary judgement. *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 141 (E.D.N.Y. 2009).

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S., 317, 322 (1986); see also Fed. R. Civ. P. 56(c). In making this determination, a court must view all facts in the light most favorable to the non-movant and must draw all reasonable inferences from the underlying facts in favor of the non-movant. *McAnaney*, 665 F. Supp. 2d at 141; *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). Any doubt must also be construed in the non-moving party's favor. *Delta Mills*, 404 B.R. at 105.

Once the moving party provides sufficient evidence, the burden shifts to the non-moving party to rebut the evidence. *Delta Mills*, 404 B.R. at 105. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *McAnaney*, 665 F. Supp. 2d at 141 (quoting *Caldarola v. Calabrese*, 298 F.2d 156, 160 (2d Cir. 2002)). "[T]he mere existence of some alleged factual dispute between the parties" cannot defeat a properly supported summary judgment motion. *Anderson*, 477 U.S. at 247-48. The dispute must relate to a genuine issue of material fact. *Delta Mills*, 404 B.R. at 105. Thus, a non-moving party cannot defeat a summary judgment motion based on

conclusory allegations and denials, but instead must provide supportive arguments or facts that show the necessity of a trial. *McAnaney*, 665 F. Supp. 2d at 141. Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The standards governing summary judgment apply to cross-motions. *Williams v. Philadelphia Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa. 1993). The Court must review the motions independently. *Panhandle Eastern Pipe Line Co. v. Utilicorp United*, 928 F.Supp. 466, 470 (D.Del. 1996). Cross-motions may seem to represent that the parties agree that there are no material issues of facts, but the Court is neither bound to "the implicit agreement" nor required to enter judgment for either party." *Enron Corp. v. Whalen (In re Enron Corp.)*, 351 B.R. 305, 310 (Bankr. S.D.N.Y. 2006).

### C. Merits

A "preference" is a transfer to a creditor which a debtor makes immediately prior to a bankruptcy whereby the creditor receives payment in full and other creditors have no such assurance. *Friedman's Inc. v. Roth Staffing Companies, L.P.* (*In re Friedman's Inc.*), Adv. No. 09-10161, 2011 WL 5975283, *2 (Bankr. D. Del. Nov. 30, 2011), *aff'd sub nom. Friedman's Liquidating Trust v. Roth Staffing Companies, L.P.*, 738 F.3d 547 (3d Cir. 2013).

The six requirements that the Trustee must establish to make a preference voidable are: (1) a transfer is made; (2) on account of antecedent debt; (3) to or for the benefit of the

creditor; (4) while the debtor was insolvent; (5) within 90 days of the filing of the petition; (6) that left the creditor better off than it would have been if the transfer had not been made and it had asserted its claim in a chapter 7 liquidation.  11 U.S.C. § 547(b).

A defense to a preference claim is for "subsequent new value" which limits or eliminates liability under Section 547(b).  Pursuant to Section 547(c)(4)(B).

> [t]he trustee may not avoid under this section a transfer. . .to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor. . . on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4)(B).  "New Value" is defined under section 547(a)(2) as "money or money's worth in goods, services, or new credit. . . that is neither void nor voidable by the debtor or the trustee under any applicable law."  11 U.S.C. § 547(a).

There are important policy considerations for the subsequent new value defense.  It encourages creditors to continue to help a troubled business; and, it prevents or limits the trustee from avoiding all transfers during the preference period where a creditor has benefitted the debtor and, consequently, its other creditors.  *See*, *e.g.*, *Friedman's*, 2011 WL 5975283 at *2.  To qualify for the defense, the transfer must not have harmed the debtor's estate.  A transfer which meets the delineated requirements, namely, it was made in exchange for new value and the transfer adds value to the estate in an amount equal to the transfer, means the debtor's estate suffers no diminution.  In such circumstance, the debtor's estate suffers no injury.

Styron argues that it is entitled to the new value defense for all invoices unpaid as of the Petition Period and subsequently paid post petition when Styron drew on the LOC. Styron reasons that: (a) it provided goods on an unsecured basis, (b) the transfers in question occurred before Styron shipped the goods covered in the invoices, and (c) the LOC was not property of Debtors' estate. It is fair to say that Styron relies principally on a recent decision of the Third Circuit Court of Appeals, *viz.*, *Friedman's Liquidating Trust v. Roth Staffing Companies LP,* 738 F.3d 547 (3d Cir. 2013). Debtor, Friedman's, issued payments to Roth totaling $82,000 during the preference period. Following the bankruptcy filing, the Court entered a wage order on debtor's motion and Friedman's paid Roth $72,412.71 on account of prepetition staffing services (Roth provided Friedman's with its staff). The liquidating trustee made a preference claim for other prepetion payments (totaling $81,997.57), and Roth asserted a subsequent new value defense, claiming that it provided new value ($100,660.88) which exceeded the preference claim. The liquidating trustee, in turn, argued that Roth could not use the post-petition payment ($72,412.71) it received pursuant to the wage order. The Third Circuit did not agree with Freidman's and held that the post-petition payment did not negate the new value defense.

The Third Circuit discussed and compared cases arriving at contrary conclusions. After discussing the statutory rules of construction and the statutory scheme of preference claims, the Third Circuit turned to policy considerations. The policy considerations, quoting from *Union Bank v. Wolas*, 502 U.S. 151, 161 (1991) (in turn, quoting from H.R. Rep. No. 95-595, at 177-178), are:

9

> First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.

The Third Circuit concluded that (1) replenishment of a debtor can occur even when a post-petition payment is for new value the creditor provided pre-petition (2) there must be a cut-off of the preference analysis at the petition date, and (3) this cut-off does not impair equal treatment of all creditors because at such time all matters are under a bankruptcy court's supervision, at which point the debtor is under the scrutiny of the court, creditors, a committee and the United States Trustee. *Friedman's*, 738 F.3d at 560-61.

In response, the Trustee distinguishes *Friedman's* in several respects;

(1) Roth did not change the terms of the engagement pre-petition.

(2) Friedman's made the post-petition payment to Roth pursuant to a court order, *i.e.*, the wage order.

(3) The Third Circuit distinguished post-petition payments made on a critical vendor motion from payments made on account of a reclamation claim. The difference arises from the policy of not rewarding the "race of diligence."

(4) Styron did not seek the Court's authority to draw on the LOC, in contrast to the wage order in *Friedman's*.

It is important, as well, to discuss, in the context of policy, the Third Circuit's discussion in *Friedman's* of its decision in *Kimmelman v. Port Auth. Of New York & New Jersey (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311 (3d Cir. 2003). Although the Court recognized *Kiwi Air* was not directly applicable to *Friedman's*, *id.* at 562, the Third Circuit explained as follows:

> In *Kiwi Air*, we held that the post-petition assumption of an executory contract under § 365 and a stipulated order pursuant to § 1110, which both require a trustee to cure certain defaults, preclude a trustee from bringing a preference action to recover pre-petition payments made pursuant to the contract. . . . If anything, *Kiwi Air* teaches that post-petition events can cast the payment in a different light in order to effectuate the purposes and provisions of the Code.
>
> *Kiwi Air* demonstrates that there are unique circumstances in which other provisions of the Bankruptcy Code dealing with post-petition transactions directly interact with § 547 and thus can alter the otherwise straightforward preference analysis.

*Friedman's*, 738 F.3d at 562.

The law is thus clear that the bankruptcy filing fixed the preference analysis as of the Petition Date. It is equally clear that under normal circumstances, a letter of credit is not property of a debtor's estate. *See*, e.g., *Kellogg v. Blue Quail Energy Corp.* (*Matter of Compton Corp.*), 831 F.2d 586, 589 (5th Cir. 1987), *reh'g granted*, 835 F.2d 584 (1988), which the Third Circuit cited in its decision in *Int'l Finance Corp. v. Kaiser Group Int'l, Inc.*, 399 F.3d 558 (3d Cir. 2005), which again held that letters of credit are not property of a debtor's estate. The *Compton* decision, however, goes beyond that simple explication of the law.

In explaining the "well established" rule of bankruptcy law, the Fifth Circuit in *Compton* stated that an issuer honoring a draft on a letter of credit does so from its own assets, not those of the customer, and, as a result, a trustee cannot enjoin post-petition payments from the letter of credit. *Compton*, 831 F.2d at 589. The Fifth Circuit further explained that the independence principle of credit law renders any disputes between the beneficiary and customer separate from the issuer's obligation to pay the beneficiary. *Compton*, 831 F.2d at 590. However, the Fifth Circuit further reasoned that "the letter of credit itself and the payments thereunder may not be property of the debtor, but the collateral pledged as a security interest for the letter of credit is." *Compton*, 831 F.2d at 590-91. The Fifth Circuit also noted that "it is not necessary that the transfer be made directly to the creditor… [if] the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it." *Compton*, 831 F.2d at 591 (quoting *Nat'l Bank of Newport v. Nat'l Herkimer County Bank*, 225 U.S. 178, 184 (1912)). The *Compton* court summarized its ruling as follows:

> The precise holding in this case needs to be emphasized. We do not hold that payments under a letter of credit, or even a letter of credit itself, constitute preferential transfers under 11 U.S.C. § 547(b) or property under U.S.C. § 541. The holding of this case fully allows the letter of credit to function. We preserve its sanctity and the underlying independence doctrine. We do not, however, allow an unsecured creditor to avoid a preference attack by utilizing a letter of credit to secure payment of an antecedent debt. Otherwise the unsecured creditor would receive an indirect preferential transfer from the granting of the security for the letter of credit to extent of the value of that

> security. Our holding does not affect the strength of or the proper use of letters of credit. When a letter of credit is issued contemporaneously with a new extension of credit, the creditor beneficiary will not be subject to a preferential attack under the direct/indirect doctrine elaborated in this case because the creditor will have given new value in exchange for the indirect benefit of the secured letter of credit. Only when a creditor receives a secured letter of credit to cover an unsecured antecedent debt will it be subject to a preferential attack under 11 U.S.C. § 547(b).

*Id.*, 831 F.2d at 594.

Here, the parties do not dispute any material facts. Styron either admits the truth of the allegation in the Complaint that the LOC was secured, or assumes the truth for purposes of the pending cross-motions. However, neither party can show that, as a matter of law, it is entitled to partial summary judgment on the new value defense. Following the Third Circuit's decision in *Friedman's*, it is clear that a court-authorized post-petition payment by the debtor does not affect a creditor's new value defense. However, it is not clear whether the same protection is available to a creditor who, on its own volition, takes action to draw on a letter of credit that, ultimately, has the effect of depleting property of the estate.

It is likewise clear that a letter of credit, itself, is not property of the estate. However, it is often secured by property that does belong to the estate. The case law is not settled as to the interaction between Section 547(c)(4)(A) and an indirect security interest, particularly on these facts, where the draw on the letter of credit almost immediately reduced the value of the property of the estate by triggering the nearly immediate repayment of the draw and associated fees. The Supreme Court has already cautioned against this type of indirect arrangement which has the effect of a creditor's recovery greater than other similarly situated

creditors.

Further, on the facts there appears to be a disputed and potentially material issue of fact. Did Styron receive payment based upon more onerous payment terms despite the parties' long standing relationship? According to the Trustee on August 26, 2011, during the Preference Period, Styron reduced the time for payment from 14 days to cash in advance. If so, does the Styron's "diligence" negate the policy reasons for allowing the new value defense? *See Union Bank*, 502 U.S. at 161. The Court is also mindful of the *Kiwi Air* suggestion that the preference analysis might be altered by "unique circumstances." *Friedman's*, 738 F.3d at 562. It remains to be determined whether Styron's conduct – the changing of payment terms and the post-petition draw on the LOC – bar the new value defense which Styron asserts.

The Court must deny the cross-motions for further development of the facts and corresponding legal arguments. First, it is unclear to the Court whether Styron did impose new payment terms, and the legal effect of any such changes. Second, because the LOC was secured and the draws diminished the estate, was Styron obligated to seek the Court's approval for the post-petition draws? Third, despite Styron's concession for purposes of its motion, the Court wants to determine for itself whether the LOC was secured. Accordingly, the Court will deny both motions.

Dated: October 1, 2014

                                                         KEVIN GROSS, U.S.B.J.